# UNITED STATES DISTRICT COURT

## for the

## Eastern District of Texas

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| Plaintiff | ) | |
| | ) | **NO. 4:20CR00107** |
| v. | ) | |
| | ) | **JUDGE MAZZANT** |
| **ANITA MOODY,** | ) | |
| Defendant | ) | |

## <u>Sentencing Memorandum and Motion for Downward Departure and/or Variance</u>

Defendant, Anita Moody, by and through counsel, submits the following Sentencing Memorandum and Motion for Downward Departure and/or Variance to the Court for consideration. 18 U.S.C. § 3553(a)(1) codifies the fundamental principle that the Court is to sentence a human being and not merely her misdeeds. As grounds therefore, the Defendant states as follows:

RELEVANT LAW

The primary directive in 18 U.S.C. § 3553(a) is for Courts to impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes of sentencing. Section 3553(a) states that such purposes are:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, Courts are directed to consider the following factors:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the kinds of sentences available;

(3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(4) the need to provide restitution to any victims of the offense.

As a starting point, after *United States v. Booker*, District Courts must consider the factors outlined in 18 U.S.C. § 3553(a) to impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in § 3553(a)(2). *See, e.g., Gall v. United States*, 552 U.S. 38, 49–50 (2007); *United States v. Booker*, 543 U.S. 220, 245 (2005). Further, the Supreme Court has made clear that District Courts have a tremendous amount of discretion when it comes to determining the sentence to be imposed in a federal criminal case. *See, e.g., Kimbrough v. United States*, 552 U.S. 85 (2007); *Gall*, 552 U.S. at 38; *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Pursuant to this line of Supreme Court authority, while District Courts must consider, as a starting

point, the applicable guideline range, they are perfectly free to then agree or disagree with that range, as they see fit. In short, the applicable guideline range is merely one of the myriad of factors that District Courts can consider when determining an appropriate sentence. As such, the advisory guideline range does not carry any greater weight or significance than any of the other factors to be considered.

The advisory sentencing guidelines as calculated in the Presentence Report have Anita Moody facing an imprisonment range of 168 to 210 months. However, at the conclusion of the investigation into the instant offenses, and after consulting with the various law enforcement agencies involved in this case, the government and the defense entered into a binding Plea Agreement for a sentence of 84 months' imprisonment. The following sets forth the reasons a sentence of 84 months is appropriate in this case and why the Court should accept the Plea Agreement and sentence Anita Moody to 84 months' imprisonment. This Sentencing Memorandum will also show that a sentence of 84 months' imprisonment in Anita Moody's case meets the primary directive in 18 U.S.C. § 3553(a) and is sufficient, but not greater than necessary, to comply with the purposes of sentencing. Specifically, a sentence of 84 months' imprisonment for Anita Moody is sufficient to reflect the seriousness of her offenses, to promote respect for the law, and provide just punishment; afford adequate deterrence; and to protect the public from any future crimes she might commit.

Post-*Booker*, there is "[n]o limitation . . . on the information concerning the background, character, and conduct of a [defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

Therefore, I urge this Honorable Court to consider the information contained in the Presentence Report, the Objections to the Presentence Report, and this Sentencing Memorandum and Motion for Downward Departure and/or Variance and impose a sentence of 84 months' imprisonment. We ask the Court to fully examine all of Anita Moody's character traits and the circumstances surrounding her life as well as her specific involvement in the instant offense when determining an equitable sentence in this case.

### Departures Under U.S.S.G. §§5K2.0, 2B1.1, comment. (n.20(C)), and 5K2.11: Outside-the-Heartland History and Characteristics of both Anita Moody and the Offenses of Conviction

Anita Moody is a 57-year-old woman convicted of Conspiracy to Commit Bank Fraud and Explosive Material – Malicious Damage to Federal Property. The seriousness of the offenses is appropriately reflected in the guideline calculations. She is not trying to negate the seriousness of the offenses. However, there are aspects of this case and of her life that take her case out of the heartland and warrant consideration for a downward departure.

Pursuant to U.S.S.C. §5K2.0(a)(1)(A), the sentencing Court may downwardly depart from the applicable guideline range if the Court finds, pursuant to 18 U.S.C. § 3553(b)(1) that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that, in order to advance the objectives set forth in 18 U.S.C. § 3553(a)(2), should result in a sentence different from that described. These departures may be based upon circumstances of a kind not adequately taken into consideration or unidentified circumstances that are relevant in determining the appropriate sentence. These departures

may be based upon circumstances present to a degree not adequately taken into consideration. And finally, these departures may be based upon offender characteristics and other circumstances that are not ordinarily relevant. Further, pursuant to U.S.S.G. §5K2.0(c), the Court may depart from the applicable guideline range based on a combination of two of more offender characteristics or other circumstances, none of which independently is sufficient to provide a basis for departure, if such offender characteristics or other circumstances, taken together, make the case an exceptional one, and each such offender characteristic is present to a substantial degree and identified in the guidelines as a permissible ground for departure. This memorandum will serve to show Anita Moody qualifies for downward departures on various grounds including under U.S.S.G. §§5K2.0, 2B1.1, comment. (n.20(C)), and/or 5K2.11.

History and Characteristics of Anita Moody

Anita Moody was born in Paris, Texas, and has lived in that general area of Texas all of her life. She was raised in a stable and supportive family in which her father managed a fertilizer plant and her mother was a homemaker. She has one younger brother. Her father passed away in 1999 and her mother currently resides in a nursing home in Cooper, Texas, and suffers from dementia.

When Anita was approximately 16 years old and attending Cooper High School, she began working for Enloe State Bank. According to Anita, she had been working as the babysitter for the bank president's children and he offered her a job at the bank. Her first job was operating the proof machine.

Anita graduated from Cooper High School in 1981 with a grade point average of 94.20 and was ranked 3rd in her class of 47 students. That fall she enrolled at East Texas State University (now Texas A&M University – Commerce) in Commerce, Texas, and subsequently earned a Bachelor of Business Administration degree in Accounting in 1985.

While she was in college, Anita married Derek Lambert. She and Mr. Lambert were married for approximately three years before divorcing in 1987. A year later, in 1988, she married James Speight. Two daughters were born to this marriage: Leigh Whitley Strickland, who is 29 years old and lives in Dekalb, Texas, and Chandler Nicole Speight, who is 25 years old and lives in Cumberland City, Tennessee. Anita's marriage with James was filled with abuse and turmoil. They were married for a little over 10 years before their divorce. James struggled with alcohol and drugs and was physically and emotionally abusive. Following the divorce, Anita served as the primary custodian for their daughters with little to no support or assistance from James.

Anita began suffering from feelings of depression during college and has taken antidepressant medication most of her adulthood. In 2019, at the conclusion of the instant offenses, she attempted suicide and was hospitalized for a week at Glen Oaks Hospital in Greenville, Texas. She is currently taking medication and seeing a therapist as a condition of her pretrial release.

From 1977 until the conclusion of the instant offense in 2019, Anita worked for Enloe State Bank. It is the only job she has ever had. She started operating the proof machine and ended as president of the bank.

Since 2008, Anita has been in a romantic relationship with Jason Ingram. They live together in Lake Creek, Texas. Following the press release regarding the instant offenses, she has been essentially a recluse at her home. She leaves only to meet with her pretrial officer, therapist, or her attorney.

## Offenses of Conviction

After she graduated from college in 1985, Anita Moody worked as a teller, cashier, and completed loans and call reports at Enloe State Bank. She stated that all of the employees did the daily computer processing work. In 2002, she was promoted to bank president. As president of the bank, she did less of the daily processing but continued to review the daily call reports and supervised the other employees. Enloe State Bank had always been a small, community-oriented bank. At most, there were 10 employees at any one time and most of the employees had been there many years like she had. Anita indicated she initially liked her job very much. However, as time went on, she felt more and more pressure to do well and to please people. She felt pressure from both the customers and the board members who wanted their dividends. It was also a highly patriarchal, male-dominated, east Texas environment where she sometimes felt she did not always have the power to refuse some customers. Many of her customers were like family members. They appealed to her sense of community and her sense of loyalty and in 2008, against her better judgment, she began making nominee loans. In the words of Anita, "customers were struggling and I kept extending their credit hoping they would 'right their ship(s)' and bring their accounts into balance. I extended my lending authority. At the beginning I didn't take any money. I really just tried to help my customers and my community."

It was not until approximately 2012 that Anita began to include herself as a beneficiary of her loan approvals. As the bank became more and more out of balance Anita knew she could not continue without getting caught and she knew she was "going to jail." She had begun to drink alcohol on a daily basis to assuage her feelings of guilt and obtained a Driving While Intoxicated conviction in 2017.

Prior to a scheduled Bank Examination in May 2019, Anita entered the bank on a Saturday morning, placed some paperwork in the middle of the conference table, and set the papers on fire. The fire was extinguished quickly with minimal damage to the bank. Following this, Anita attempted to kill herself and spent one week in Glen Oaks Hospital in Greenville, Texas.

## Departure Analysis

Anita Moody asks the Court to consider downward departures pursuant to U.S.S.G. §§5K2.0, 2B1.1, comment. (n.20(C)), and/or 5K2.11. The loss amount used to calculate the Sentencing Guidelines in this case is $15,849,200.82. This amount overstates the loss in this case and, therefore; based on U.S.S.G. §2B1.1, comment. (n.20(C)), this may be grounds for a downward departure. Anita Moody acknowledges that she stipulated to a restitution amount of $11,136,241.82. She does not deny this and has already met with Assistant U.S. Attorneys with the Financial Litigation Unit to begin the process of liquidating assets and making payment. Nevertheless, it is important to note this restitution amount is higher than an intended loss amount would typically be under the Sentencing Guidelines. First, this restitution amount includes interest. As this amount is based on loans that were due and then were extended, sometimes multiple times,

interest accrued and was then compounded over time. There is no information to show that the interest was removed from any of 119 fraudulent loans used to determine the loss amount. Second, each of these loans were initially collateralized by something. The Guidelines specifically state that the loss shall be reduced by the value of the collateral pledged. There is no information to show that the value of the collateral pledged when the initial loans were legitimately authorized has been credited against the loss. Therefore, based upon these two issues: interest and collateral pledged, the loss amount used to calculate the Sentencing Guidelines is overstated and the Court can consider this as a grounds for downward departure under U.S.S.G. §2B1.1, comment. (n.20(C)).

Second, Anita asks the Court to consider a downward departure under U.S.S.G. §5K2.11, Lesser Harms. This section of the Guidelines states that, sometimes, a defendant may commit a crime in order to avoid a perceived greater harm. In such instances, a reduced sentence may be appropriate. At the onset of her criminal behavior, Anita Moody truly believed she was acting to help her community. She did not know her illegal behavior would spin so out of control. She is not asking the Court to excuse her actions or to forgive her entirely, but to consider her mindset at inception when considering the Sentencing Guidelines and the Plea Agreement.

Based upon all of these factors, taken separately or together, there are grounds for the Court to depart downward under U.S.S.G. §§5K2.0, 2B1.1, comment. (n.20(C)), and/or 5K2.11, and sentence Anita Moody to 84 months' imprisonment in accordance with the written Plea Agreement.

# Variances under 18 U.S.C. § 3553(a):

## Nature and Circumstances of the Offense, Characteristics of the Defendant, and Post Offense Rehabilitation

In addition to the grounds for departure pursuant to the Sentencing Guidelines, the Court has the authority to sentence Anita Moody to a term less than one within the advisory guideline range pursuant to a variance under 18 U.S.C. § 3553(a). Specifically, I pray this Court sentence Anita to 84 months' imprisonment. Such a sentence is sufficient, but not greater than necessary to achieve the goals set forth in 18 U.S.C. § 3553(a)(2).

Pursuant to 18 U.S.C. § 3553(a), when imposing a sentence, the Court shall consider the history and characteristics of the defendant and the nature and circumstances of the offense, and craft a sentence to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment; afford adequate deterrence; protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Anita knows her offense is serious, and she understands the Court must impose a significant sentence. However, a sentence of 168 months' imprisonment is greater than necessary to show Anita the seriousness of the offense, promote respect for the law, and impose just punishment. It is also greater than necessary to deter future criminal conduct and protect the public.

### Seriousness of the Offense, Respect for the Law, and Just Punishment

Anita Moody acknowledges the extreme seriousness of her offenses. Her feelings of guilt and remorse over her actions started long before the offense was known and began causing serious emotional problems for her in approximately 2012. At that time, she began drinking alcohol every day. She stated this was the only way she could live with herself; to become numb to who she was and who she had become. By the time she ended the offense, she also tried to end her life. Her self-destructive behaviors themselves show she is well aware of the seriousness of the offenses.

However, since her arrest Anita has engaged in several significant activities that also reflect her awareness of the seriousness of the offense and her respect for the law. She began cooperating immediately. She met with agents from the Federal Bureau of Investigation, the Alcohol, Tobacco, Firearms, and Explosives, as well as the Federal Deposit Insurance Corporation. She has provided full access to all financial records. She has also met with Assistant U.S. Attorneys with the Financial Litigation Unit and has begun to liquidate any and all possible assets to begin to pay back restitution. All of this occurred prior to an arrest or formal charges. And she is in therapy for depression and alcohol abuse. Pursuant to *Pepper v. U.S.*, 131 S.Ct. 1229 (2011), a District Court may consider evidence of the defendant's post-sentencing rehabilitation, and such evidence may, in appropriate cases, support a downward variance from the sentencing guidelines. In addition, she pled guilty to an Information. She never denied her involvement and immediately pleaded guilty. She has been shunned by her community and many of her family and friends. These are all examples and concrete evidence of post offense rehabilitation.

Anita accepts responsibility for her offense. She feels immense remorse, sadness, and dismay about her involvement. She cannot discuss it without tears. She pleaded guilty and has never denied her involvement or her culpability in the offense.

Anita is a 57-year-old woman who has never been in jail before. A 7-year term of imprisonment for a first offense is sufficient to show Anita the seriousness of the offense, promote respect for the law, and impose just punishment. It is also sufficient to deter future criminal conduct and protect the public. A sentence of 84 months is just punishment for an individual who has never been to jail before. Although 84 months is a significant variance from the advisory guideline range, it is still a significant, and just, punishment for an individual who has never been convicted of a felony offense or been in jail before.

## Victims of the Offense and Restitution

It is not an overstatement to suggest that the only genuine identifiable victim of the offense is the FDIC and the United States Government. While it is true that the bank was closed as a result of the offenses, it is equally true that the shareholders of the bank were largely represented on the bank board or as officers and employees. They were not victims. In fact, they likely were either at best grossly negligent in their review of the bank's transactions or, at worst, they themselves were aware of the criminal conduct. It is only now expedient for them to question the conduct of Anita Moody, when they turned a blind eye when the banks' performance was falsely improved by the criminal conduct.

There is the suggestion that some depositors held an amount greater than the FDIC limit, but Defense has not been made aware of any depositor who actually lost funds as a result of the nominee loans.

With regard to restitution to the FDIC, Anita Moody has cooperated with forfeiture requests and has continued, even since the original sentencing date, to assist the Government in every way for the recovery of restitution from all available sources.

Therefore, the need to provide restitution to any victims of the offense, while substantial, is addressed by a sentence of 84 months together with the attendant provision of her plea.

## Deterrence to Criminal Conduct

The sentence imposed must also afford adequate deterrence to criminal conduct. Anita acknowledges that her sentence must be sufficient to afford adequate deterrence. Anita now has a felony conviction that will impact her for the rest of her life. She pled guilty and did not shirk her responsibility or blame others. She has not tried to hide. She has suffered private and public embarrassment and shame due to her criminal activity. She will never be able to possess a firearm, vote in an election, serve on a jury, or hold public office. She is now, essentially, a second-class, disenfranchised citizen of the United States. These collateral consequences serve as additional deterrence to criminal conduct that should be considered when imposing sentence on Anita Moody.

### Educational/Vocational Training, Medical Care, and Correctional Treatment

The sentence imposed should provide needed educational/vocational training, medical care, or other correctional treatment in the most effective manner. Anita will receive any needed rehabilitative programming within an 84-month prison sentence. A longer sentence of imprisonment will have no effect on any treatment needs she might have.

### Protection of the Public

The sentence imposed should protect the public from future crimes. Anita Moody is in Criminal History Category II. She has one prior misdemeanor conviction for Driving While Intoxicated. She has never been in jail before. She is currently 57 years old. If given a sentence of 84 months, she will be approximately 63 years old upon release. She will be no more a danger to the public at 63 than she would if given a sentence of 168 months and released at the age of 70. Given her lack of serious criminal history, a longer sentence of imprisonment will have no additional impact on the protection of the public.

Based upon all of the above, a below-guideline sentence of 84 months, in accordance with the written Plea Agreement, is believed to appropriately reflect the seriousness of the offense, promote respect for the law, and provide just punishment; afford adequate deterrence; and protect the public from the defendant. In sum, when all of the circumstances of Anita Moody's case are evaluated under the requirements of 18 U.S.C. § 3553(a), a non-guideline sentence of 84 months' imprisonment is reasonable and sufficient – but not greater than necessary – to achieve the goals of sentencing.

## Conclusion

Based upon the foregoing U.S. Sentencing Guideline departure analysis under U.S.S.G. §§5K2.0, 2B1.1, comment. (n.20(C)), and/or 5K2.11, as well as the 18 U.S.C. § 3553(a) factor analysis, Anita Moody prays that this Court will impose a sentence of 84 months' imprisonment in accordance with the written Plea Agreement.

There are both circumstances of the offense and characteristics of the defendant that take her case out of the heartland and give justification for a departure under U.S.S.G. §§K2.0, 2B1.1, comment. (n.20(C)), and/or 5K2.11. Furthermore, the same circumstances of the offense as well as Anita's history and characteristics and her post offense rehabilitation justify a variance from the advisory guideline range under 18 U.S.C. § 3553(a). She does not seek to minimize the severity of her actions, but rather to demonstrate to the Court that the proposed sentence is, in fact, the sentence that is best suited to address the offense of conviction. A sentence of 84 months is sufficient to reflect the seriousness of the offense, to promote respect for the law, and provide just punishment; afford adequate deterrence; and to protect the public from the defendant.

In sum, Anita Moody prays this Court determine these requested departures and variances are warranted by the most fundamental notions of justice and fashion a sentence which is fundamentally fair under all of the circumstances of this case. Here, a guideline term of 168 months' imprisonment is not warranted, and the defendant requests the Court impose a sentence of 84 months in accordance with her agreement with the United States Attorney's Office.

Respectfully submitted,

Smith McDowell Ginn
P.O. Box 493
Sulphur Springs, TX 75483
Telephone: 903-885-3116
Facsimile: 903-885-7549

_____
John C. Ginn, Attorney for the Defendant
State Bar No.: 07966900
jcginn@easttexaslaw.com

## CERTIFICATE OF SERVICE

I certify that on November 24, 2020, the foregoing was forwarded by electronic filing to Maureen Smith, Assistant United States Attorney and Keith Wallace, United States Probation Department by electronic means.

_____
John C. Ginn